# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### SHREVEPORT DIVISION

| | | |
|---|---|---|
| GEOFFREY EASON | * | CIVIL ACTION NO.  12-2599 |
| VERSUS | * | JUDGE S. MAURICE HICKS |
| WARDEN, LOUISIANA STATE PENITENTIARY | * | MAG. JUDGE KAREN L. HAYES |

### REPORT AND RECOMMENDATION

Petitioner Geoffrey Eason filed his petition for writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 on September 27, 2012.  [doc. # 1].  Respondent responded to the petition on February 20, 2013.  [doc. # 12].  Petitioner, an inmate in the custody of Louisiana's Department of Public Safety and Corrections incarcerated at the Louisiana State Penitentiary, Angola, Louisiana, attacks his conviction and sentence for two counts of armed robbery.  This matter has been referred to the undersigned for review, report, and recommendation in accordance with 28 U.S.C. § 636 and the standing orders of the Court.

### BACKGROUND

The underlying facts in this case have been set forth by the Louisiana Second Circuit Court of Appeal:

> On the evening of January 31, 2006, Dr. Wayne McMahen and his teenage daughter, M.M., returned to their home in Springhill, Louisiana, after attending a  ballgame. M.M. went to her room, while Dr. McMahen sat in the den watching the news. Dr. McMahen heard the family dog barking in the kitchen, so he went into the kitchen to let the dog out into the yard. As he opened the sliding glass door, a masked man, armed with a gun, rushed into the door. Dr. McMahen tried to slam the door shut, but the armed man put his hand into the doorframe to hold the door open.

The armed man entered the home, followed by two other masked men. The men forced Dr. McMahen to the ground and demanded money. Dr. McMahen gave the men his wallet, and the man with the gun held Dr. McMahen down while the other two men searched the house for valuables. Dr. McMahen saw that the gunman's injured hand was bleeding on the floor.

One of the other two men entered M.M.'s room and demanded money; M.M. surrendered several hundred dollars to the masked man. When that man left her room, M.M. went to her door to look down the hall, and another masked man armed with a gun slammed her door shut. When M.M. heard another door slam, she believed that the men had left, so she came out of her room only to find the three men, two of whom had guns, still in the home. M.M. returned to her room.

Dr. McMahen then told the men that his keys were in his truck. After some discussion among themselves, the men took the truck and left. Dr. McMahen immediately called his wife, who was at Dr. McMahen's office, and asked her to call police. Dr. McMahen's truck was equipped with the OnStar system, so Dr. McMahen called OnStar, which then located the truck via satellite within ten or fifteen minutes.

In the meantime, Springhill police arrived at the McMahen residence. Police Chief Ronnie Coleman found the robber's blood on the floor. He explained that he used sterile water and a sterile swab to collect the blood evidence to permit later testing. Coleman put the sample into a bag, then another officer marked the bag for identification and sealed the bag, and then Chief Coleman stored the evidence in a secure closet. Coleman admitted that he had no special training in the collection of DNA evidence.

The robbers were not located with the truck, so in the ensuing days police questioned various people in the community about their knowledge of the crime. The police developed a juvenile suspect, Alva Tealer, and questioned Tealer in the presence of his mother. After waiving his rights, Tealer admitted his involvement in the crime and named the defendant, and another man, Standrius White, as the other two participants.

Police found and questioned White and Eason, and then arrested the men for armed robbery. After their arrest, White and Eason were placed in the back of a patrol car. The patrol car was equipped with a video camera whose microphone recorded a whispered conversation between White and Eason at the time of their arrest; in part of the conversation, one of the men can be heard to say "… he slammed my hand in the door…." In addition, police took DNA swabs from the men's mouths. Laboratory analysis showed that the blood on the McMahens' floor came from the defendant, Geoffrey Eason. Because the men wore masks during the robbery, the victims were unable to identify them.

2

*State v. Eason*, 3 So.3d 685, 687-88 (La.App. 2 Cir. 2009).

Petitioner and his co-defendants were charged with two counts of armed robbery with a firearm, and were tried together.  (R. 34).  Petitioner was found guilty on both counts, and was sentenced to fifty years imprisonment at hard labor for each victim without the benefit of probation, parole, or suspension of sentence, to be served concurrently.  (R. 166-70); *see also* (R. 1265).  On appeal, the state court found that the trial court's failure to specify whether the sentence included an additional term of imprisonment for the use of a firearm to be error patent.  (R. 1218); *see also Eason*, 3 So. 3d at 697.  Accordingly, the state appellate court affirmed Petitioner's conviction, but vacated his sentence and remanded the case to the trial court for re-sentencing.  (R. 1239).  Shortly thereafter, Petitioner filed a writ application challenging the state appellate court's affirmation of Petitioner's conviction to the Louisiana Supreme Court, and it was denied on December 11, 2009.  (R. 1283); *see also State v. Eason*, 23 So. 3d 913 (La. 2009).

On remand from the state appellate court, the trial court re-sentenced Petitioner to two sentences of forty-five years hard labor without benefit of probation, parole or suspension of sentence for the armed robbery charges, and two five year sentences to be served on the firearm enhancement in the parish jail.  The five-year sentences were to run concurrently with each other but consecutively to the sentences imposed for armed robbery, while the sentences for the two armed robbery counts were to be served concurrently.  Therefore, the trial court once again imposed a sentence totaling fifty years.  Petitioner appealed the trial court's sentence, arguing that it was excessive.  (R. 98).  On appeal, the state appellate court affirmed Petitioner's sentence.  *See* (R. 114); *see also State v. Eason*, 36 So. 3d 396 (La.App. 2 Cir. 2010).

On July 29, 2010, Petitioner filed an application for Post Conviction Relief ("PCR") in the 26th Judicial District Court raising five claims of ineffective assistance of counsel.  [doc. # 1-

3

4, P. 61].  On January 18, 2011, the state trial court denied Petitioner's PCR.  [doc. # 1-5, P. 19].

His application for writs was denied by the Second Circuit on March 16, 2011.  *Id.* at 51.  His

writ application to the Louisiana Supreme Court was denied on March 9, 2012.  *Id.* at 75; *see*

*also State ex rel. Eason v. State*, 83 So. 3d 1052 (La. 2012).

Petitioner filed the instant petition on September 27, 2012, raising the five claims

originally presented on direct appeal and the five ineffective assistance of counsel claims raised

in his PCR application.  *See* [doc. # 1-2].   Specifically, Petitioner argues the following:

1. The trial court erred by denying Petitioner's motion to recuse;

2. The trial court erred by denying Petitioner's challenges for cause;

3. The trial court erred by denying Petitioner's motion for change of venue;

4. Insufficiency of the evidence;

5. Excessive sentence; and

6. Counsel was ineffective for failure to (A) file a motion to quash the second armed robbery charge as to victim MM; (B) object to prosecutorial misconduct; (C) object to taped evidence being replayed several times to the jury; (D) raise issues on appeal related to objections on the record to prosecutorial misconduct; and (E) challenge unqualified evidence collectors, chain of custody, and illegal collection of DNA evidence.

 [doc. # 1-2, P. 6, 8, 11, 13, 15, 22, 23, 28].

The matter is now before the undersigned.

## LAW AND ANALYSIS

### I.    Standard of Review – 28 U.S.C. § 2254

The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, 28 U.S.C. § 2254,

governs *habeas corpus* relief.  The AEDPA limits how a federal court may consider *habeas* claims.

After the state courts have "adjudicated the merits" of an inmate's complaints, federal review "is

limited to the record that was before the state court[.]"  *Cullen v. Pinholster*, ––– U.S. –––, 131 S.

Ct. 1388, 1398 (2011).  An inmate must show that the adjudication of the claim in state court:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

A decision is "contrary to" clearly established Federal law "if the state court arrives at a

conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the

state court decides a case differently than [the Supreme Court] has on a set of materially

indistinguishable facts."  *Dowthitt v. Johnson*, 230 F.3d 733, 740-41 (5th Cir. 2000) (quoting

*Williams v. Taylor*, 529 U.S. 362 (2000)).  "The 'contrary to' requirement refers to holdings, as

opposed to the dicta, of . . . [the Supreme Court's] decisions as of the time of the relevant state-

court decision."  *Dowthitt*, 230 F.3d at 740.  Under the "unreasonable application" clause, a

federal *habeas* court may grant the writ only if the state court "identifies the correct governing

legal principle from . . . [the Supreme Court's] decisions but unreasonably applies the principle

to the facts of the prisoner's case."  *Id.* at 741.

Section 2254(d)(2) speaks to factual determinations made by the state courts.  Federal

courts presume such determinations to be correct; however, the petitioner can rebut this

presumption by clear and convincing evidence.  28 U.S.C. § 2254(e).

## II.    Petitioner's Claims

1.      Claim One: Motion to recuse the trial court judge

In Petitioner's first claim he argues that the trial court erred in denying his motion to

recuse Judge Robinson because of the judge's friendship with the victim and prior judicial experience with the defendant.  [doc. # 1-2, P. 6].

The state appellate court summarized the facts and procedural history relating to this claim:

> The motion to recuse was heard by Judge Bolin. Judge Robinson was called as a witness and testified that he had, for many years, lived three doors down from the McMahens and that he and Mr. McMahen had once been "pretty good" friends and frequently visited each other's homes. The judge had also been friends with Dr. McMahen's father, the former sheriff.  However, the judge said that he was no longer close friends with Dr. McMahen and had seen him only rarely since moving away from Springhill in 2000.
>
> In addition, Judge Robinson had only recently placed Eason on probation for another offense at the time Eason committed this offense. The judge said that he was disappointed to hear that Eason was involved and might have voiced that disappointment to others.  Judge Robinson stated that neither his prior friendship with the victim nor his recent judicial encounter with Eason would prevent him from presiding over the case in a fair and impartial manner.
>
> After hearing Judge Robinson's testimony, Judge Bolin concluded that Judge Robinson's relationship to the victim was "not of a substantial nature to the extent that it would affect his ability to be fair and impartial." The judge was convinced that Judge Robinson would not be biased, prejudiced or have any personal interest in the result; consequently, the judge found that Judge Robinson could conduct a fair and impartial trial and denied the defendants' motion over their stated objection.

*Eason*, 3 So. 3d at 689.  On appeal, the state court rejected Petitioner's assignment of error on the grounds that he "failed to produce evidence that the judge's prior relationship with the victim would result in bias or prejudice."  *Id.*

It is well settled that under the Due Process clause of the Constitution, the accused in any criminal trial is guaranteed the right to a fair and impartial tribunal.  *Nethery v. Collins*, 993 F.2d 1154, 1157 (5th Cir. 1993); *In re Murchison*, 349 U.S. 133, 136 (1955); *Bracy v. Gramley*, 520 U.S. 899, 905 (1997).  However, the Due Process clause establishes a constitutional floor, not a uniform standard.  *Gramley*, 520 U.S. at 904-905.  Accordingly, a trial judge's disqualification

6

under a state statute or code of judicial conduct does not ordinarily implicate the Constitution. *Id.*; *Fero v. Kerby*, 39 F.3d 1462, 1479-1480 (10th Cir. 1994); *Dyas v. Lockhart*, 705 F.2d 993, 997 (8th Cir. 1983); *Nichols v. Scott*, 69 F.3d 1255, 1277 (5th Cir. 1995) (citing *United States v. Couch*, 896 F.2d 78, 81 (5th Cir. 1990) (noting that the federal statutory disqualification standard is "more demanding than that required by the Due Process Clause…." Thus, conduct violative of the statute may not constitute a due process deficiency)).

To secure habeas relief on this basis, the petitioner must "establish that a genuine question exists concerning [the judge's] impartiality." *Bigby v. Dretke*, 402 F.3d 551, 559 (5th Cir. 2005) (citing *Liteky v. United States*, 510 U.S. 540, 552 (1994)). There must be an appearance of impropriety which rises to the level of a fundamental defect resulting in a complete miscarriage of justice; absent that level of severity, habeas relief is not cognizable. *Couch*, 896 F.2d at 81. Bias is not lightly established because ordinarily courts "presume that public officials have properly discharged their official duties." *Bigby*, 402 F.3d at 558 (citing *Valley v. Rapides Parish School Board*, 118 F.3d 1047, 1052 (5th Cir. 1997); *Bracy*, 520 U.S. at 909). Thus, the United States Supreme Court has found that decision makers are constitutionally unacceptable only when the decision maker has a direct personal, substantial, and pecuniary interest in the outcome of the case; has been the target of personal abuse or criticism from the party before him; or when he has the dual role of investigating and adjudicating disputes and complaints. *Id.* (citations omitted); *see also Baran v. Port of Beaumont*, 57 F.3d 436, 444 (5th Cir. 1995).

Petitioner's claim of bias or prejudice is premised on Judge Robinson's former relationship with one of the victims and the fact that Judge Robinson had previously sentenced Petitioner. However, as the state court determined, Judge Robinson's personal relationship with

7

the victim ended approximately seven years prior to Petitioner's trial, when Judge Robinson moved out of the victim's neighborhood.  At the recusal hearing, Judge Robinson plainly testified that neither his prior friendship with the victim nor his recent judicial encounter with Petitioner would prevent him from being fair and impartial.  Moreover, the record is devoid of any adverse, biased or prejudicial rulings, actions or inactions by Judge Robinson against Petitioner.  Thus, Petitioner has failed to evidence a genuine question concerning Judge Robinson's impartiality.  Accordingly, Petitioner's claims for relief on this ground should be **DENIED**.

   2.   Claim Two: Challenges for cause

   Petitioner argues that the trial court erred in denying challenges for cause as to four jurors – Janice Brewton, Patricia Bearden, Robin Chreene-Role and Robin Fish.  [doc. # 1-2, P. 8].

   Petitioner challenged Janice Brewton for cause, citing her relationship with the victim as evidence that she could not be fair and impartial.  (R. 349).  According to the record, Ms. Brewton had been employed as a veterinary assistant by the victim fourteen years prior to trial. (R. 348).  She stated that she "was close to the family, so in all honesty, it's hard for me to – I can't say these men are guilty because I don't know they are . . . [b]ut by the same token, just because I was close to . . . [the victim's family] I might harbor something inside that I – I just want to be totally honest about the whole thing."  (R. 350).   However, as the state appellate court found, Ms. Brewton did state that she could follow the instructions as given to her by the court and only consider the evidence presented in the courtroom.  (R. 351).  Moreover, she agreed that she could serve as a fair and impartial juror, stating "I would have to do what Judge Robinson said and I feel like I could do that."  (R. 393).  The state appellate court found that

   [t]he prior employment relationship and friendship between Ms. Brewton and Dr.

> McMahen was properly the subject of extensive questioning because of the risk of bias or prejudice. The record reflects that the attorneys thoroughly examined Ms. Brewton on the potential effect, if any, of her relationship with Dr. McMahen on the juror's fairness or impartiality. Ms. Brewton repeatedly said that she would be able to be fair to both sides despite her prior employment with Dr. McMahen and friendship with the McMahens, and the trial court based its decision upon its observation of the juror's demeanor as she gave her answers. Based on the record, there is no evidence that the trial court erred in accepting Ms. Brewton's answers and explanations.

*Eason*, 3 So. 3d at 694.

The second juror challenged for cause was Ms. Patricia Bearden.  Ms. Bearden stated that her family has "always been fairly good friends" with the victim and his family.  (R. 360).  "He was my son's baseball coach.  Of course, we had horses and/or dogs all through the years and so [the victim] has been our veterinarian and my husband grew up in the same town that [the victim's wife] did and worked for her father at one time."  *Id.*  At the time of Petitioner's trial, Ms. Bearden explained that she saw the victim only when she brought her animals to his office and that she did not socialize with him and his family.  *Id.*  Moreover, Ms. Bearden agreed that she "would be able to follow the law as given . . . by Judge Robinson only and also only to consider the evidence that actually was produced . . ."  *Id.*  When asked if she could remain impartial, she replied "I hope as a good citizen I could be. Yes, sir. And I would very much try to."  *Id.*  The state appellate court found that, like Ms. Brewton, Ms. Bearden

> . . . repeatedly said that she could be a fair and impartial juror.  Ms. Bearden informed the court and the parties that her present relationship with the McMahens was primarily professional, not personal, and that she had not seen them socially since their children were no longer in school. The trial judge was convinced that Ms. Bearden gave genuine answers and could be  fair, and this record does not undermine the trial judge's conclusion.

*Eason*, 3 So. 3d at 694-95.

The third juror in question is Ms. Robin Fish.  According to the record, Ms. Fish is a

small business owner and operator of Minden Home Care, a medical equipment supplier.  (R. 679-80).  During voir dire, Ms. Fish indicated that "[t]is is our busiest time of year," and if she was selected for jury service, then she would have to work nights because she is "the only one that does [the] billing."  (R. 682).  However, Ms. Fish also stated "I want to do my duty" and that she understood her role in applying the applicable law, judging the witnesses' credibility, and that she could be a fair and impartial juror.  (R. 682-85).  The state appellate court determined that the trial court's

> impression of Ms. Fish's situation was that Ms. Fish would be inconvenienced by her service, but that the inconvenience would not actually impair her ability to be fair despite her stated concerns to the contrary. The judge considered all of the juror's answers to questions and also took into consideration that the trial was likely to be of short duration, both of which were appropriate factors in deciding the likely impact of jury service upon Ms. Fish. Considering the juror's answers during voir dire as a whole and the deference shown to the trial court's findings based upon its observations of the juror, the trial court's decision is not clearly wrong.

*Eason*, 3 So. 3d at 695.

The fourth and final juror in question is Ms. Christie Chreene-Rolen.  During voir dire, Ms. Rolen asked "why would [Petitioner] be here if he hasn't done anything wrong? Why would he be charged with things if he hadn't done it?"  (R. 805).  However, after being explained that it is the prosecution's burden to prove Petitioner guilt beyond a reasonable doubt, Ms. Rolen stated "I'll have to hear all the – look at all the evidence to see."  *Id.*  Additionally, she agreed to accept the law as given by the trial court judge and make her determination of guilt from the evidence.  (R. 806).  The appellate court found that the "[t]he trial court made a finding that this juror was initially confused about the law.  This finding is supported by the record of her answers as a whole . . . [t]he trial court was convinced that the juror had a sufficient understanding and acceptance of the law, and that finding is not clearly wrong."  *Eason*, 3 So. 3d at 696.

Under federal law, a state trial court's refusal to grant a challenge for cause does not provide the basis for *habeas* relief unless the disqualifying fact was so prejudicial that the refusal deprived the petitioner of a fundamentally fair trial.  *Pruett v. Thigpen*, 665 F. Supp. 1254, 1266 (S.D. Miss. 1986); *see also Rayford v. Thaler*, No. 06-0978, 2012 U.S. Dist. LEXIS 8837, at * 14 (N.D. Tex. Jan. 25, 2012) (citing *Dorsey v. Quarterman*, 494 F.3d 527, 533 (5th Cir. 2007); *Ross v. Oklahoma*, 487 U.S. 81, 88 (1988)).  Due process requires that a jury be "capable and willing to decide the issue solely on the evidence before it." *Smith v. Phillips*, 455 U.S. 209 (1982); *Peters v. Kiff*, 407 U.S. 493 (1972) (most minimal due process requires impartial jurors); *Rogers v. McMullen*, 673 F.2d 1185, 1189 (11th Cir. 1982) (state criminal who can demonstrate that a member of the jury which heard his case was biased is entitled to habeas relief).

As stated *supra*, all four jurors were thoroughly questioned and indicated that they were capable of and willing to decide Petitioner's guilt solely based on the evidence at trial.  The undersigned cannot find that the state appellate court's findings were contrary to clearly established federal law – that is, the disqualifying facts were not so prejudicial that the state court's refusal deprived Petitioner of a fundamentally fair trial.  Accordingly, Petitioner's claims for relief on this ground should be **DENIED**.

3.    Claim Three: Change of venue

Petitioner next argues that the trial court erred in denying his motion for change of venue. This claim is appended to Petitioner's second claim and only consists of two sentences: "Additionally, the inability to get a fair and impartial jury evidence the need for change of venue. It was error to deny the motion for change of venue."  [doc. # 1-2, P. 10-11].  The state appellate court determined that "[t]here is no indication that publicity or any prejudice in the mind of the jurors necessitated a change of venue in this case. Many of the jurors knew little of the case and

11

the jurors who knew the victim convinced the court that they would be able to put that aside and hear the case impartially." *Eason*, 3 So. 3d at 696-97.

A *habeas* petitioner has the burden of proving facts in support of his claim. Unsupported conclusory allegations do not warrant *habeas* relief. *Uresti v. Lynaugh*, 821 F.2d 1099, 1103 (5th Cir. 1987); *Wilson v. Butler*, 813 F.2d 664, 671 (5th Cir. 1987); *United States v. Cockrell*, 720 F.2d 1423, 1427 (5th Cir. 1983); *United States v. Jones*, 614 F.2d 80, 82 (5th Cir. 1980).

Petitioner's contention that the trial court erred in denying his motion for change of venue, to the extent that it is not simply a restatement of his complaints regarding the denials of his challenges for cause, amounts to a claim that, because he was convicted, the jury must not have been fair. As such, Petitioner's claim on this basis is frivolous and should be **DENIED**.

4.   Claim Four: Sufficiency of the evidence

Petitioner argues that the prosecution failed to provide sufficient evidence of each of the elements of Armed Robbery to prove Petitioner's guilt beyond a reasonable doubt. [doc. # 1-2, P. 19-20]. Specifically, Petitioner challenges the state's proof of his identity through the DNA evidence and argues that the remaining evidence was insufficient to convict him, because "[n]either victim could identify" him as the perpetrator of these offenses." *Id.* at 13.

When a *habeas* petitioner asserts that the evidence presented to the court was insufficient to support his conviction, the limited question before a federal *habeas* court is whether the state appellate court's decision to reject that claim was an objectively unreasonable application of the clearly established federal law set out in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Williams v. Puckett*, 283 F.3d 272, 278-79 (5th Cir. 2002). A conviction is based on sufficient evidence if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*,

12

443 U.S. at 319.  The *Jackson* inquiry "does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit."  *Herrera v. Collins*, 506 U.S. 390, 402 (1993).  Thus, a conviction may rest on sufficient evidence "even though the facts also support one or more reasonable hypotheses consistent with the defendant's claim of innocence."  *Gibson v. Collins*, 947 F.2d 780, 783 (5th Cir. 1991).

> The Louisiana appellate court properly reviewed the evidence and found that
>
> the testimony of the crime lab technician, Pat Wojtkiewicz, did not show or even suggest any errors in the collection process. Wojtkiewicz stated that samples are often collected using cotton swabs, and this was the procedure employed by Chief Coleman in collecting the blood from the McMahens' floor. Although Wojtkiewicz said that errors in the collection process can lead to errors in the result, the evidence does not demonstrate that any error occurred in this case. Further, the laboratory evidently had no difficulty in testing the samples provided to it by Chief Coleman. The judge correctly allowed the DNA evidence into evidence, and the jury was thus entitled to rely on this evidence.
>
> *            *            *
>
> The DNA evidence is highly probative of the defendant's guilt in this case. The defendant's blood was found just inside Dr. McMahen's rear door at precisely the point where Dr. McMahen said the armed masked man bled due to having his hand slammed in the door. In addition to the DNA evidence, the jury heard the testimony of Mr. Tealer, who stated that Eason was armed with a firearm and was first through the McMahens' door during the robbery.

*Eason*, 3 So. 3d at 691.

Ultimately, the Louisiana appeals court, applying the *Jackson* standard, found that "[t]he evidence presented was sufficient to prove beyond a reasonable doubt that Eason, armed with a firearm, committed the armed robbery with a firearm of Royce McMahen and M.M."  *Id.*  A review of the state court record shows that the state court's findings were entirely reasonable; *a fortiori*, the undersigned cannot say that the state court's application of *Jackson* was objectively unreasonable; therefore, Petitioner's claims for relief based on insufficiency of the evidence

should be **DENIED.**

    5.    <u>Claim Five: Excessive sentence</u>

Next, Petitioner claims that the sentence imposed by the trial court was excessive, in violation of the Eighth Amendment.  In particular, he argues that his fifty year sentence was unconstitutionally excessive because it is a "needless and purposeless imposition of pain and suffering . . ." [doc. # 1-2, P. 15].

Federal habeas courts must accord wide discretion to a state trial court's sentencing decision, and claims arising out of the decision are generally not constitutionally cognizable. *Haynes v. Butler*, 825 F.2d 921, 923 (5th Cir. 1987) (citations omitted).  However, relief may be required where the petitioner can show that his sentence exceeds or is outside the statutory limits, or is wholly unauthorized by law.  *Id*. at 923-24.  If a sentence is within the statutory limits, as here, the petitioner must show "that the sentencing decision was wholly devoid of discretion or amounted to an 'arbitrary or capricious abuse of discretion' . . . or that an error of law resulted in the improper exercise of the sentencer's discretion and thereby deprived the petitioner of his liberty."  *Id*. at 924 (citations omitted).

Petitioner was convicted of two counts of armed robbery and sentenced to 45 years at hard labor without the benefit of probation, parole or suspension of sentence on each count, with both sentences to be served concurrently, and an additional two terms of five years in the parish jail under the firearm enhancement provision to be served concurrent with each other but consecutive to the hard labor terms.  (R. 34).  Petitioner contends that the sentences imposed were excessive in light of his young child and his recent "spiritual renewal." [doc. # 1-2, P. 15].  According to the Second Circuit and the record, however, the trial court considered these factors, as well as the sentencing guidelines contained in La. C. Cr. P. art. 894.1.  Both courts determined that the seriousness and violent nature of petitioner's actions, the defendant's criminal history as

a second felony offender, the fact that his conduct took place during a period of probation which had been intended to give the defendant a "second chance," and the harm done to the victims all supported the maximum sentence.  *See Eason*, 36 So. 3d at 401.

The undersigned finds that the state courts' determinations do not amount to "arbitrary or capricious abuse[s] of discretion."  *See Butler*, 825 F.2d at 924.   For these reasons, Petitioner's sentence was not unconstitutionally excessive, and his fifth claim should be **DENIED**.

6.    Claim 6: Ineffective assistance of counsel

Next, Petitioner asserts five ineffective assistance of counsel claims originally raised in his PCR application.

Ineffective assistance of counsel claims may be considered under 28 U.S.C. § 2254.  *See Clark v. Thaler*, 673 F.3d 410 (5th Cir. 2012); *Amos v. Thronton*, 646 F.3d 199 (5th Cir. 2011); *Pape v. Thaler*, 645 F.3d 281 (5th Cir. 2011).  Substandard advice of counsel rises to a constitutional violation only if the substandard conduct deprives the defendant of his constitutional right to a fair trial or deprives the petitioner of some other constitutional right. *Strickland v. Washington*, 466 U.S. 668, 686-87 (1984).  To prevail on a claim of ineffective assistance of counsel, a petitioner must show both (1) that his counsel's actions fell below an objective standard of reasonableness and (2) that the ineffectiveness of counsel prejudiced him. *Id.*

If the petitioner does not make a sufficient showing as to one prong of the test, the other prong need not be considered.  *Tucker v. Johnson*, 115 F.3d 276, 281 (5th Cir. 1997).  The prongs of the test also need not be analyzed in any particular order.  *Goodwin v. Johnson*, 132 F.3d 162, 172 n.6 (5th Cir. 1997).  Furthermore, "mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue."  *Green v. Johnson*, 160 F.3d 1029, 1042-43 (5th Cir. 1998).

15

In applying the first prong of *Strickland*, a court should presume that the attorney's actions are encompassed within the wide range of reasonable competence and fall under the ambit of trial strategy.  *See Strickland*, 466 U.S. at 689-90.  The petitioner must show that the performance of counsel fell "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690; *Ward v. Whitley*, 21 F.3d 1355 (5th Cir. 1994).

To establish prejudice, the second prong, the petitioner must demonstrate that the attorney's actions "were so serious as to render the proceedings unreliable and fundamentally unfair."  *United States v. Saenz-Forero*, 27 F.3d 1016, 1019 (5th Cir. 1994); *Murray v. Maggio*, 736 F.2d 279 (5th Cir. 1984).  Unreliability and unfairness do not result "if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitled him."  *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993); *see also Mangum v. Hargett*, 67 F.3d 80, 84 (5th Cir. 1995).  Accordingly, counsel cannot be ineffective for failing to raise a meritless claim, *Sones v. Hargett*, 61 F.3d 410, 415 n.5 (5th Cir. 1995), and prejudice generally exists only if the defendant demonstrates that he would have received less jail time.  *United States v. Grammas*, 376 F.3d 433, 436 (5th Cir. 2004).

On collateral review, the state court summarily dismissed all of Petitioner's ineffective assistance of counsel claims, stating that he had not shown "that but for counsel's unprofessional errors, the result of the proceeding would have been different, he has failed to show that his attorney's conduct fell below the objective standard of reasonableness and thus has not met his burden of proof."  [doc. # 1-5, P. 22].  The undersigned agrees.

a.      *Failure to file motion to quash*

First, Petitioner claims ineffective assistance of counsel for trial counsel's failure to move to quash the second armed robbery charge as to victim MM.  [doc. # 1-2, P. 15].  Petitioner argues that victim MM "testified that she did not see any gun, nor was she ever threatened with a

gun at the time her money was taken from her in her room by one man . . . [c]learly MM was not a victim of armed robbery with a firearm." *Id.*

A pretrial motion of the type sought by Petitioner is within the professional judgment afforded to counsel. *See United States v. Lewis*, 786 F.2d 1278, 1283 n.4 (5th Cir. 1986) (citations omitted); *see also Williams v. Beto*, 354 F.2d 698, 703 (5th Cir. 1965) (citation omitted).  Having found above that the evidence was sufficient to support Petitioner's convictions on both armed robbery counts, this Court necessarily finds that a motion to quash based on lack of evidence would have been frivolous.  Accordingly, the state appellate court's decision was not contrary to clearly established federal law, and Petitioner's claim should be **DENIED**.

### b. *Failure to object to prosecutorial misconduct*

Second, Petitioner claims that his trial counsel was ineffective because she failed to object to the prosecution's closing arguments when the prosecutor misrepresented the "evidence and law."  [doc. # 1-2, P. 22].

As a general rule, a decision not to object to a closing argument falls within the realm of trial strategy.  *Drew v. Collins*, 964 F.2d 411, 423 (5th Cir. 1992).  This strategy may include such considerations as a reluctance to antagonize the jury through continued objections or a decision to let her closing argument speak for itself.  *See Wiley v. Puckett*, 969 F.2d 86, 102 (5th Cir. 1992).  In order to prevail, Petitioner must show that had the desired objections been lodged, the result of the proceeding would probably have been different.  *Adams v. Quarterman*, 324 F. App'x. 340, (5th Cir. 2009). In order to make this showing, Petitioner must demonstrate that an objection to the closing argument would in fact have been meritorious. *Rivas v. Thaler*, 432 F. App'x. 395 (5th Cir. 2011) (citing *Turner v. Quarterman*, 481 F.3d 292, 298 (5th Cir. 2007)).

Petitioner fails to provide any valid legal basis for an objection.  Furthermore, even

assuming that trial counsel could object to the prosecution's closing argument, Petitioner has failed to show that she could have raised a valid objection, or that this objection would have been sustained, much less that but for the failure to raise such an objection, the result of the his trial would likely have been different.  Accordingly, Petitioner's claim on this basis should be **DENIED**.

        c.     *Failure to object to taped evidence being replayed several times*

Petitioner claims that trial counsel was ineffective when she allowed a confession tape to be played during the prosecution's closing argument, arguing that "each time the tape was played during the State's closing arguments, there was a violation of the evidentiary rules . . . [t]he jury was hammered with it, which prejudiced the Applicant at his trial."  [doc. # 1-2, P. 26].

The admissibility of evidence is governed by state law.  *See Dickerson v. Guste*, 932 F.2d 1142, 1145 (5th Cir.1991) (citing *Cook v. Morrill*, 783 F.2d 593, 596 (5th Cir. 1986)).  As the Supreme Court has repeatedly held, "federal *habeas corpus* relief does not lie for errors of state law."  *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)); *see also Pulley v. Harris*, 465 U.S. 37, 41 (1984) ("A federal court may not issue the writ on the basis of a perceived error of state law.").  Therefore, an alleged violation of state law, in and of itself, does not merit federal *habeas corpus* relief.  As explained by the Fifth Circuit, federal courts "'do not sit as a 'super state supreme court' in [a *habeas corpus*] proceeding to review errors under state law."  *Dickerson*, 932 F.2d at 1145 (*quoting Martin v. Wainwright*, 428 F.2d 356, 357 (5th Cir.1970)); *accord Cronnon v. Alabama*, 587 F.2d 246, 250 (5th Cir.1979) (quoting *Martin*).  A federal court will only grant *habeas corpus* relief based on a state court's erroneous evidentiary ruling if it results in a "denial of fundamental fairness" under the Fourteenth Amendment Due Process Clause.  *Neal v. Cain*, 141 F.3d 207, 214 (5th Cir. 1998) (quoting *Porter v. Estelle*, 709 F.2d 944, 957 (5th Cir.1983)).  Therefore, "[t]he erroneous

18

admission of prejudicial evidence will justify *habeas* relief only if the admission was a crucial, highly significant factor in the defendant's conviction." *Id.* Moreover, as the Supreme Court recently explained, "the potential unreliability of a type of evidence does not alone render its introduction at the defendant's trial fundamentally unfair." *Perry v. New Hampshire*, ––– U.S. –––, –––, 132 S.Ct. 716, 728, 181 L.Ed.2d 694 (2012) (citing *Kansas v. Ventris*, 556 U.S. 586, 594 (2009); *Dowling v. United States*, 493 U.S. 342, 353 (1990)).

In this case, having failed to show that the introduction of the tape violated any state court evidentiary rule, Petitioner is unable to establish error, much less that any error was so prejudicial as to result in a denial of a constitutionally fair proceeding. Accordingly, Petitioner's claim on this basis should be **DENIED**.[1]

### d.     *Failure to raise issues on appeal*

Petitioner tersely argues that "appellate counsel rendered ineffective assistance of counsel by not arguing for reversal of this conviction" on the grounds of prosecutorial misconduct, and furthermore, he "requests that accumulation of errors also be considered by this Honorable Court as grounds for a new trial." [doc. # 1-2, P. 28].

A criminal defendant is constitutionally entitled to the effective assistance of counsel on direct appeal as of right; the *Strickland* standard applies to claims of ineffective assistance of counsel by both trial and appellate counsel. *See Lombard v. Lynaugh*, 868 F.2d 1475, 1479 (5th Cir. 1989); *see also Strickland*, 466 U.S. at 687; *United States v. Merida*, 985 F.2d 198, 202 (5th Cir. 1993). However, as stated *supra*, a *habeas* petitioner has the burden of proving facts in

---

[1]  Additionally, to the extent that Petitioner attempts to assert that his trial counsel was ineffective for failure to move to suppress the statement, the recorded statement was not the result of a police interview or interrogation, and therefore, there was no attachment of Fifth Amendment rights and any motion to suppress would have been frivolous. *See Rhode Island v. Innis*, 446 U.S. 291 (1980).

support of his claim. Unsupported conclusory allegations do not warrant *habeas* relief. *Lynaugh*, 821 F.2d at 1103; *Butler*, 813 F.2d at 671; *Cockrell*, 720 F.2d at 1427; *Jones*, 614 F.2d at 82.

In addition, to the extent Petitioner seeks to rely on his argument regarding his trial counsel's failure to object or to raise a prosecutorial misconduct claim as support for his claim that his appellate counsel was also ineffective for failing to raise the same claim, his argument is unavailing for the same reasons stated above, and should be **DENIED** on that basis as well.

> e. *Failure to challenge unqualified evidence collectors, chain of custody, and illegal collection of DNA evidence.*

In Petitioner's final claim, he argues that trial counsel failed to object to the admission of DNA evidence and a blood sample that he alleges was inadmissible.  [doc. # 1-2, P. 29]. Specifically, Petitioner asserts that this "tainted evidence placed before . . . [the] jury, clearly deviat[ed] from [Louisiana] 'chain of custody rules'" for the following reasons:

1. Captain Colemen and Officer Edwards were untrained in the collection of blood evidence;

2. The blood sample was improperly placed in an unsecured closet with a regular factory push in knob to open and lock;

3. The blood sample was not stored in a temperature controlled environment; and

4. It was not known when blood sample was transported to crime lab, nor was it known how long it had been stored in an unsecured closet.

*Id.*

The testimony of the crime lab technician, Pat Wojtkiewicz, did not show or even suggest any errors in the collection process. *See* (R. 1042- 57).  In fact, Mr. Wojtkiewicz described a two-step verification system that is used by analysts to insure the accuracy of the DNA report. *See* (R. 1042).  Based on Mr. Wojkiewicz's analysis of the blood samples, there was a one-in-19.6 trillion chance that the blood came from someone other than Petitioner.  (R.

1044).   Regarding the chain of custody, Mr. Wojkiewicz stated that before "the evidence . . . comes into the laboratory [it] must be sealed" and "[i]f that sample or if that evidence was not sealed or if they picked it up and it showed where the seal had been tampered with, that would have been noted in this case or noted for that evidence . . . [i]n this case there was no notation . . ."   (R. 1046).   Then the blood sample "goes into the evidence locker" – "[t]hese are locked facilities at the laboratory which have limited access" – and is only opened when the analysts are going to perform tests.   *Id.*.   Additionally, Mr. Wojkiewicz testified that samples are often collected using cotton swabs, and this was the procedure employed by Chief Coleman in collecting the blood from the victim's floor.   *See* (R. 1049-50; 1053).   Although Mr. Wojtkiewicz said that errors in the collection process can lead to errors in the result, the record does not demonstrate that any error occurred in this case.   *See* (R. 1054).

Therefore, Petitioner's allegations are unsupported by the record, and trial counsel was not ineffective for failure to object to the admission of the DNA evidence.   Accordingly, Petitioner's final claim should be **DENIED**.

## CONCLUSION AND RECOMMENDATION

For the reasons stated above,

**IT IS RECOMMENDED** that the petition for *habeas corpus* filed by Petitioner Geoffrey Eason [doc. # 1] be **DENIED and DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this report and recommendation to file specific, written objections with the Clerk of Court.   A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the District Judge at the time of filing.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED**

**FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.  Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals.  **Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.** *See* 28 U.S.C. § 2253(c)(2).  **A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 10th day of May, 2013.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE